# Lowery *v.* The State.

*Indictment for Murder.*

1. *Proof of character by proof of particular acts.*—It is not permissible to prove good or bad character, either of a party on trial, or of a

[Lowery v. The State.]

witness, to fortify or impeach his testimony, by proving particular acts.

2. *Proof of evidence of absent witness.*—Proof of the evidence given by witnesses at a preliminary trial is admissible, when it is shown that said witnesses had been sworn and examined; that the defendant had then had the opportunity of cross-examining them, and that since, the witnesses had returned to their homes in another State, and had not since been seen in this State.

3. *Application for continuance.*—The granting or refusal of an application for a continuance, is left to the sound discretion of the trial court, and its action in this respect is not revisable in this court.

4. *Motion for new trial.*—A motion for a new trial, based on newly discovered evidence, is properly denied when not supported by sufficient proof of diligence, and when it is not clear that the evidence proposed to be offered would be competent

APPEAL from Madison Circuit Court.

Tried before Hon. H. C. SPEAKE.

The defendant was tried at the Spring Term, 1893, for the murder of James Robinson, and was convicted of murder in the second degree. His punishment was fixed by the jury at thirty years imprisonment in the State penitentiary. A motion was made for a new trial. On the trial, a witness for the State, Ann Robinson, the wife of deceased, testified that the deceased and the defendant had never had a cross word before the morning of the day deceased was killed, but that she, witness, was very hostile to defendant, and that her hostility to him began early after his marriage to her daughter, (the defendant being her son-in-law); she testified to the killing of her husband on an excursion train from Chattanooga, Tenn., on the 8th of May, 1892, by the defendant shooting him with a pistol; that deceased and defendant both lived at Chattanooga at the time of the killing; that on the morning of the 8th of May, a short time before the excursion train left for Huntsville, defendant went to the house of deceased where the wife of defendant had been for several days, to induce her to go with him to Huntsville to live, and that while there an altercation had sprung up between deceased and defendant; that deceased ordered defendant to leave, and struck him; that at that time defendant's wife had his (defendant's) pistol, and had it when the defendant left the house, and that witness now had the pistol in her possession; she testified to the circumstances of the killing; that the defendant shot her husband in the head as he sat by her side in the train, near the city limits of Huntsville, and that he died a few hours afterwards.

On cross-examination, this witness was asked, for the purpose of impeaching her testimony, if she had not married her husband, the deceased, while her former husband, one

Vol. 98.

Peter Lacey, was living, without having procured a divorce from said Lacey? To this question the State objected, the Court sustained the objection, and the defendant excepted. The witness was further asked, if she had not lived in adultery with deceased before her marriage with him? The State objected to this question, and the Court sustained the objection, and the defendant excepted. The witness was asked, if she had not lived in adultery with several men, naming them, before she married deceased? Objection was made by the State to this question, which was sustained, and defendant excepted.

The bill of exceptions recites that. "The State was permitted by the Court to prove the statement of an absent witness, one, Martin Swann, a negro, made upon the preliminary examination of the case on the day of the killing, or the next day, upon a predicate laid by one, Z. P. Davis, a policeman of the city of Huntsville, who was present at the preliminary trial. Davis stated that on the day of the killing, May 8th, 1892, or the day after, he was present when Swann was put on the stand for the State, and said he lived in Chattanooga, Tenn., and had a family and house there; and, that before leaving Huntsville, after the trial, Swann gave him his address. On cross-examination, Davis said that he had not seen, or heard of Swann since that day, or the day after, and did not know where he lived now, and that he might be living in Huntsville, so far as he knew." The defendant objected to the admission of Swann's former testimony on this predicate. The Court overruled the objection, and the defendant excepted.

After conviction, the defendant moved for a new trial, basing his motion on the following grounds:

1. That defendant should have been granted a continuance on account of the absence of his regularly employed attorneys.

2. That he had been unable to secure the testimony of his main witnesses, who were non-residents of the State, and who had failed to answer interrogatories filed by defendant.

3. That the Court had refused to let defendant make a showing of what he expected to prove by said absent witnesses.

4. That, though the defendant offered an affidavit of one of these non-resident, absent witnesses, that said witness could prove a material fact in defense of applicant, and that such fact had just come to his knowledge, the Court refused to grant defendant a continuance, or allow him to make a showing as to what he expected to prove by this witness.

[Lowery v. The State.]

5.   Because of a prejudicial article appearing in *The Hunts-ville Mercury*, during the progress of the trial, which had probably been read by the members of the jury, or some of them.   (A copy of said article was attached.)

6.   Because certain witnesses (naming them) for the State had been permitted to give testimony damaging to defendant, in rebuttal, when the same should have been given as a part of the State's original case, and the defendant to have been allowed an opportunity to answer it.

7.   Because the Court asked defendant's attorney in open Court, in the hearing of the jury, and while charging the jury, if he insisted on the doctrine of self-defense in this case.

8.   Because the offense proved, was, at most, of no higher grade than manslaughter.

9.   Because the verdict was contrary to the law and the evidence.

10.   Because the punishment awarded was excessive.

11.   Because of the discovery of evidence material to his defense, since his trial and conviction, which said evidence is particularly set out in an affidavit, and which was entirely unknown to the defendant or his attorneys until after this conviction.

This application for a new trial was accompanied by an affidavit of a witness, Henry Smith, that he saw the deceased soon after he was shot, and saw a woman, he was told was his wife, take a pistol out of his back-pocket; and, by the affidavit of another witness, Walker Haywood, who testified that within two or three weeks after the killing, the witness, Ann Robinson, wife of the deceased, told him, affiant, that the defendant had complained to her, that his wife had told him that the deceased had outraged her, and that the defendant was greatly troubled at the time, about it, and that neither the defendant nor any of his attorneys knew anything of said Ann's having told affiant this until offer the trial and conviction of defendant; that affiant was present at the trial and heard Ann's testimony, and heard her swear on the stand to facts totally inconsistent with what she had told him.

The Court overruled the motion for a new trial, and the defendant excepted.

M. HUMES, W. L. CLAY, and T. BETTS, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

[Lowery v. The State.]

[No briefs came to the hands of the Reporter.]

COLEMAN, J.—The defendant Lowery was convicted of murder in the second degree. The questions for consideration arise upon the admission and exclusion of evidence, and the refusal of the Court to grant a new trial.

One of the witnesses examined for the prosecution, on cross examination, for the purpose of impeaching her testimony, was asked, if she had not been guilty of certain specified acts of adultery. An objection to the question was sustained. It may be that on cross examination, a witness who has testified to the good character of a defendant, as evidence to be considered in connection with other evidence affecting the question of guilt or innocence, for the purpose of testing the extent of the witness' information or the soundness and *bona fides* of his opinion, may be asked on cross examination, if he had not heard that the defendant had been accused of certain named offenses of a character similar to the one with which the defendant was charged. To illustrate, a man charged with murder or robbery. A witness testifies to the defendant's good character for peace and quietude. On cross examination, the witness may be asked, if he had not heard that the defendant had killed a man, or in the other case, that the defendant had been accused of a certain robbery. This is permissible only on cross examination, not for the purpose of proving or disproving the defendant's good character, but as affecting the bias, extent of the information and credibility to be given to the testimony of the witness.

*Ingram v. The State*, 67 Ala. 72; *Moore v. The State*, 68 Ala. 362; 1 Best. on Ev. § 261; *Stoudenmire v. Williamson*, 29 Ala. 564; *Moulton v. The State*, 88 Ala. 116; *Hussey v. The State*, 87 Ala. 183.

It is not permissible to prove good or bad character, either of a party on trial, or of a witness to fortify or impeach his testimony, by proving particular acts. This principle is clearly settled. *Walker v. The State*, 91 Ala. 79; *Moore v. State*, 68 Ala., *supra*, *Morgan v. State*, 88 Ala. 223; *Moulton v. State, Ib.* 116; *Nugent v. State*, 19 Ala. 540; *Hussey v. The State*, 87 Ala. 133. There was no error in sustaining the objection to the questions.

The court permitted proof of the evidence given by a witness on the preliminary trial of the defendant, but who was absent at the time of the present trial. We think the predicate for the introduction of this evidence, brought the case fairly within the rule which authorizes the introduction of

4-98.

such evidence.   It was shown that the absent witnesses were
examined at the preliminary trial, that defendant had an op-
portunity to cross-examine them, that these witnesses resided
in the State of Tennessee, and that after the preliminary
trial the witnesses returned to their homes in Tennessee, and
had not been seen in this State since their examination.
The evidence was admissible under the rules declared in the
following cases:   *Pruitt v. State,* 92 Ala. 41; *Perry v. State,*
87 Ala. 30; *Lowe v. State,* 86 Ala. 47–52; *South v. State, Ib.*
617.

The granting or refusal of an application for a continuance
is left to the sound discretion of the trial court, and its ac-
tion in this respect is not revisable here.   In fact, there is
no evidence that defendant made known to the court he was
not ready for trial, or that he applied for a continuance.

The motion for a new trial, based upon newly discovered
evidence, was not sustained by sufficient proof.   No show-
ing as to diligence is made, and it is not clear that the facts
offered to be proven by the witness Haywood could be suc-
cessfully offered in evidence, on another trial—certainly not
as original evidence.

The one ground upon which the motion for a new trial is
predicated, which probably is meritorious, is that the court
"asked defendant's counsel, in open court, in the presence
of the jury, and while charging the jury, if he insisted on
the doctrine of self-defense."   We have examined the bill
of exceptions carefully, and find no proof of this statement
by the court, or any exception to any statement or charge of
the court.   We can not consider it.

There is no error in the record, and the case must be af-
firmed.