This appeal arises from appellant's June 24, 1988, convictions of theft in the first degree in two cases (§13A-8-3, Code of Alabama 1975), and theft in the second degree in one case (§ 13A-8-4, Code of Alabama 1975). On September 2, 1988, appellant was sentenced to five years' imprisonment in each case, with the sentences to run concurrently. The sentencing order further provided that appellant serve 90 days in the county jail with the remainder of each sentence suspended pending 3 years' good behavior on probation.
Appellant raises seven issues on appeal; however, we confine our review to only one issue, which involves the use, by the state, of evidence of prior bad acts or misconduct to impeach appellant's testimony.
During cross-examination of appellant, the prosecution was allowed to question appellant about certain details of a letter and personal "resume," which he had previously submitted to the district attorney of Jefferson County, seeking employment. The prosecuting attorney specifically questioned appellant about the references, in his resume, to his employment with the United States Department of Justice from 1973 to 1975, the dates of his employment with a liability insurance company, and his experience as a baseball player and Hockey Association employee. In this questioning, the prosecution implied that the information referred to in the resume was false. Appellant timely objected to the questions on the ground that they constituted an attempt to impeach appellant on a collateral and immaterial matter. The letter and resume, along with a letter from the Department of Justice stating that there was no record of appellant's ever working for it, were offered in evidence by the state and admitted by the trial court over the objections of appellant.
It is not permissible in this state to prove good or bad character, either of a party on trial or of a witness, to fortify or impeach his testimony, by proving particular acts.Lowery v. State, 98 Ala. 45, 13 So. 498 (1893).
The rule in Alabama is stated as follows:
 "A witness may not be cross-examined for impeachment as to specific acts of misconduct by him which have no relevancy except as tending to show that he is a person of bad character as a whole or with respect to truth and veracity. . . .
". . . .
 "This rule of excluding questions on cross about specific bad acts of the witness does not apply to exclude prior criminal acts involving moral turpitude for which the witness has been convicted. . . ."
C. Gamble, McElroy's Alabama Evidence, § 141.01(10) (3d ed. 1977) (footnotes omitted).
 "One of the cardinal principles of the common law is that a person's character, good or bad, offered for the purpose of showing his conduct on a specified occasion, is not provable by evidence of his specific acts or course of conduct. The policy behind this rule is that the reception of such evidence would result in an intolerable confusion of the issues.
 "The most commonly applied form of the above principle is found in the rule that the criminally accused may not prove his good character, as tending to show that he did not commit the crime in question, by showing prior specific good acts. It is, of course, the right of the accused to introduce his good character but only by means of general reputation. *Page 807 
Once the accused introduces evidence of his good character, the door is opened for the prosecution to rebut with proof of his bad character. However, the prosecution may not prove the accused's bad character by showing prior specific acts. The prosecution, like the accused, is relegated to proving character via general reputation."
Id. at § 26.01(1) (footnotes omitted).
The prosecutor, in cross-examining appellant about his job application and in showing that he had made false representations in it, was attempting to prove by unrelated and immaterial bad acts that appellant's character, as a whole and for truth and veracity, was bad. This was obviously the state's sole purpose in pursuing this line of questioning and in presenting this evidence. Evidence, if available, that appellant was of general bad character, or of general bad character for truth and veracity, would have been admissible for purposes of impeachment. However, it is well settled in Alabama that particular independent facts, though bearing on the question of veracity, cannot be put in evidence for the purpose of discrediting the witness. Grooms v. State, 228 Ala. 133,152 So. 455 (1934).[1] In addition to the reason mentioned inMcElroy's for the policy behind this rule, that the admission of such evidence would result in an intolerable confusion of the issues, another important policy reason for the rule is that an "accused may always be prepared to meet an attack on his general character, but cannot fairly be required, without notice, to defend against every possible aspersion which may be made against him, or to controvert particular facts."Underhill's Criminal Evidence § 197 (P. Herrick 5th ed. 1956) (footnotes omitted). See also Wright v. State, 32 Ala. App. 169,23 So.2d 517, cert. denied, 247 Ala. 180, 23 So.2d 519 (1945);Mullins v. State, 31 Ala. App. 571, 19 So.2d 845 (1944). For these reasons, the admission of testimony and evidence relating to the false statements in appellant's resume constituted error and, under the circumstances of this case, reversible error.
We deem it unnecessary to address the other issues raised on appeal.
The judgment is due to be, and it is hereby, reversed, and the case is remanded.
REVERSED AND REMANDED.
All Judges concur.
[1] While Alabama adheres to this, a number of other jurisdictions have adopted the rule that any witness, including the criminally accused, may be impeached by his prior criminal acts or misconduct for which there is no conviction, if the particular act has probative value to indicate a lack of truth and veracity. See C. Gamble, Character Evidence: AComprehensive Approach 60 (Agora Publishing Company 1987). See, e.g., Fed.R.Evid. 608(b).