The appellant, Deborah Blaine Valerie Mines, was convicted of murder, a violation of § 13A-6-2, Code of Alabama 1975. She was sentenced to 20 years in the state penitentiary. Two issues are presented on appeal.
 I
The appellant contends that the trial court erred in holding that no prima facie case of racial discrimination was established under Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The record discloses that during voir dire, the prosecution used at least four, and maybe five, of its six peremptory strikes to remove black jurors. The appellant maintains that this fact alone was sufficient to raise the presumption that the prosecution used its strikes in a racially discriminatory manner.
The trial court's finding that a defendant did not present a prima facie case of discrimination under Batson is reviewed under a "clearly erroneous" standard. Wilson v. State, [Ms. CR-92-1223, January 13, 1995] ___ So.2d ___ (Ala.Cr.App. 1995). "In determining whether there is a prima facie case, the court is to consider 'all relevant circumstances' which could lead to an inference of discrimination." Ex parte Branch,526 So.2d 609, 622 (Ala. 1987). In Branch, the Alabama Supreme Court set forth a nonexhaustive list of nine types of evidence that could be used to raise this inference.
 "1. Evidence that the 'jurors in question share[d] only this one characteristic — their membership in the group — and that in all other respects they [were] as heterogeneous as the community as a whole.' [People v.] Wheeler, 22 Cal. 3d [258,] at 280, 583 P.2d [748,] at 764, 148 Cal.Rptr. [890,] at 905 [(1978)]. For instance 'it may be significant that the persons challenged, although all black, include both men and women and are a variety of ages, occupations, and social or economic conditions,' Wheeler, 22 Cal.3d at 280, 583 P.2d at 764, 148 Cal.Rptr. at 905, n. 27, indicating that race was the deciding factor.
 "2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors. Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
 "3. The past conduct of the offending attorney in using peremptory challenges to strike all blacks from the jury venire. Swain [v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)].
 "4. The type and manner of the offending attorney's questions and statements during voir dire, including nothing more than desultory voir dire. Batson, 476 U.S. at 97, 106 S.Ct. at 1723; Wheeler, 22 Cal.3d at 281, 583 P.2d at 764, 148 Cal.Rptr. at 905.
 "5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions. Slappy v. State, 503 So.2d 350, 355 (Fla. Dist. Ct. App. 1987); People v. Turner, 42 Cal.3d 711, 726 P.2d 102, 230 Cal.Rptr. 656 (1986); People v. Wheeler, 22 Cal.3d 258, 583 P.2d 748, 764, 148 Cal.Rptr. 890 [905] (1978). *Page 123 
 "6. Disparate treatment of members of the jury venire with the same characteristics; or who answer a question in the same or similar manner; e.g., in Slappy, a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged. Slappy, 503 So.2d at 352 and 355.
 "7. Disparate examination of members of the venire; e.g., in Slappy, a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
 "8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury. Batson, 476 U.S. at 93, 106 S.Ct. at 1721; Washington v. Davis, 426 U.S. [229,] at 242[, 96 S.Ct. 2040, [2049], 48 L.Ed.2d 597 (1976)].
 "9. The offending party used peremptory challenges to dismiss all or most black jurors, but did not use all of his peremptory challenges. See Slappy, 503 So.2d at 354, Turner, supra."
Branch, 526 So.2d at 622-23. The fact that the prosecution engaged in a pattern of strikes against black jurors is but one factor the court may consider.
In the appellant's case, the prosecution used either four or five of its six strikes against black jurors. The appellant presented no other evidence of discrimination. The record reflects that the trial court's decision not to require the prosecution to give race-neutral explanations was based on what the court had seen and heard during voir dire. The questions, statements, and conduct of the attorneys during voir dire are evidence a trial judge may consider in determining whether a prima facie case of discrimination has been established.Branch. Also, the trial court may consider whether the prosecution engaged in disparate treatment of certain jury members or racial groups. Branch.
Because the record does not disclose the questions asked by the prosecution during voir dire, we have no basis to conclude that the trial court's decision was clearly erroneous. " 'Where the record is silent on appeal, it will be presumed what ought to have been done was not only done, but rightly done.' "Owens v. State, 597 So.2d 734, 736 (Ala.Cr.App. 1992), quotingJolly v. State, 405 So.2d 76 (Ala.Cr.App. 1981). Moreover, the record reflects that the appellant did not object to any of the questions asked by the prosecution, and she did not present any evidence of discriminatory questioning to the trial court during the Batson hearing.
When considered alone, evidence of the prosecution's use of a large number of its peremptory strikes to exclude black jurors would allow, but would not compel, a finding of prima facial discrimination. Ex parte Thomas, 659 So.2d 3 (Ala. 1994), (defendant may establish a prima facie case solely on prosecution's use of its strikes against black veniremembers). Other types of relevant evidence specified in Branch may be examined to determine whether the inference of discrimination has been raised. Even if the prosecution uses all of its peremptory strikes to exclude black jurors, a trial court is not required to rule that a prima facie case of discrimination has been made if other relevant evidence sheds light upon the issue.
 II
The appellant next contends that the trial court erred when it denied her motion for a judgment of acquittal. She asserts that the State's evidence was insufficient to warrant a conviction.
The evidence tended to show that on March 25, 1993, the appellant stabbed and killed Alfreada Phillips during a fight that occurred in Woodward Park in Birmingham, Alabama. An autopsy revealed that Ms. Phillips died as a result of four stab wounds to her back. The State presented the testimony of three eyewitnesses during its case-in-chief.
Shaneka Phillips, the victim's daughter, testified that she and her mother were sitting in the bleachers facing the baseball field at the park when she began arguing with her schoolmate, Eltanya Mines. Shaneka was in the sixth grade at Jones Valley Middle *Page 124 
School where Eltanya was in the eighth grade. After the argument, Eltanya left the park to go home. She later returned in a white automobile with the appellant and three other individuals. Shaneka testified that Eltanya approached her, and hit her from behind. They began fighting.
Tacoya Caver testified that she was at Woodward Park that night, and that the appellant and the individuals who had arrived in the white car joined in the fight. Tacoya stated that when Ms. Phillips saw what was occurring, she ran towards Shaneka, and began to pull the assailants off her daughter. Tacoya testified that at this point, the appellant turned around and struck Ms. Phillips in the face. The appellant and Ms. Phillips began to struggle and hit each other, and then Ms. Phillips staggered and fell. There was blood on her back, and Tacoya saw that she had been stabbed. As the appellant ran to the car, Tacoya saw the appellant put a bloodied knife in her bra or in her shirt pocket.
Tolisha Middleton was also at the park the night Ms. Phillips was killed. Tolisha testified that the appellant had cut her with a knife during the fight, and that the knife was the same one that the appellant used to stab Ms. Phillips. Tolisha saw the appellant hide the knife in her bra or pocket.
 "In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). Furthermore, a judgment of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the judgment is so decided as to clearly convince the reviewing court that it was wrong and unjust. Jackson v. State, 516 So.2d 726 (Ala.Cr.App. 1985)."
Powe v. State, 597 So.2d 721, 724 (Ala. 1991).
The evidence against the appellant was sufficient to sustain a conviction. The trial court did not err in denying the motion for a judgment of acquittal.
For the foregoing reasons, the conviction of the appellant is due to be affirmed.
AFFIRMED.
All the Judges concur.